IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2015

## STATE OF TENNESSEE v. RICHARD LEE MORRIS

**Appeal from the Circuit Court for Madison County**
**No. 14-123    Don H. Allen, Judge**

_____

**No. W2015-00364-CCA-R3-CD  -  Filed January 27, 2016**

_____

The Defendant-Appellant, Richard Lee Morris, was indicted by a Madison County Grand Jury for attempted rape and misdemeanor assault. Following a jury trial, he was convicted of the lesser included offense of sexual battery and the charged offense of assault. See T.C.A. §§ 39-13-505, -101(a)(1) (Supp. 2013). The trial court sentenced Morris as a Range II, multiple offender to four years for the sexual battery conviction and to eleven months and twenty-nine days for the assault conviction and ordered the sentences served consecutively. On appeal, Morris argues that the evidence is insufficient to sustain his assault conviction. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and ROBERT L. HOLLOWAY, JR., J., joined.

George Morton Googe, District Public Defender; Gregory D. Gookin, Assistant Public Defender, Jackson, Tennessee, for the Defendant-Appellant, Richard Lee Morris.

Herbert H. Slatery, III, Attorney General and Reporter; Caitlin Smith, Assistant Attorney General; James G. (Jerry) Woodall, District Attorney General; and Shaun A. Brown, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Trial.** The victim, L.R.,[1] testified that she and Morris dated for a couple of years prior to the incident in this case. On November 1, 2013, Morris completed some odd jobs

---

[1] It is the policy of this court to protect the victims of sexual offenses by identifying them by their initials only.

at the victim's mother's home before arriving at the victim's house at approximately 8:00 p.m. The victim's twenty-three-year-old son allowed Morris into her home, and Morris joined the victim in her bedroom. Shortly thereafter, the victim's son left the home.

The victim stated that Morris drank two forty-ounce beers while they watched television. At the time, the victim was upset because her sister had passed away two weeks before. The victim said Morris did not understand why she was still grieving, which led to an argument. Morris asked the victim how long she was going to mourn her sister's death because it had been two weeks since they had engaged in sexual relations. In an attempt to get Morris to leave her home, the victim told him that she needed to go to sleep because she had a doctor's appointment the next morning. Morris continued to pressure her for sex, and the victim told him that she needed some time to herself following her sister's death. When the victim told him that she did not want to finish her wine cooler, Morris became angrier and looked like he was going to storm out of her house. The victim, believing that Morris was about to leave, turned her attention back to the television program, and Morris jumped on top of her on the bed.

At the time, the victim had on a long nightgown, which she had intentionally worn to avoid attracting sexual attention from Morris, and Morris was wearing shorts and a shirt. Morris pinned the victim down on the bed and attempted to remove her gown and underwear. He then informed her, "I'm going to rape you before I leave you alone." The victim heard Morris unbuckle his belt and heard his shorts fall to the floor. As the victim struggled to escape, she felt Morris's penis between her thighs and on top of her vagina. She said that although Morris was trying to penetrate her, she believed that he ejaculated before he was able to penetrate her. During the struggle, Morris scratched the victim's vagina with his fingernails. Morris knew that the victim had a device affixed to her back to treat her degenerative disk disease, which was loosened during the attack. The victim said that she experienced pain after this device was damaged.

The victim stated that she tried to use her taser gun on Morris, but he knocked it out of her hand. The victim told Morris to get off of her and informed him that she was calling the police. She grabbed her cellular phone, and despite Morris's attempts to knock it out of her hand, she held onto it. When she screamed that she was calling the police, Morris jumped off the bed, pulled up his pants, and fled. The victim then noticed that she felt sticky and wet between her thighs. The victim stated that the attack lasted approximately five minutes.

After Morris left her house, the victim called the police. She was still in a state of shock when the police arrived. The victim was later taken by ambulance to a hospital where she underwent a sexual assault examination. While there, a nurse collected

evidence for the sexual assault kit, and an x-ray was taken of her back. The victim said that on the day of his arrest, Morris called her from jail and apologized for the attack.

Daniel Long, an investigator with the major crimes unit of the Jackson Police Department, testified that upon arriving at the crime scene, he saw that the bed in the victim's bedroom was in disarray. He also noted that belongings had been scattered, and there were large beer bottles in the kitchen. Investigator Long said that the victim, who was wearing a nightgown, told him what had occurred. He later collected the victim's nightgown, underwear, and bedspread as evidence. Investigator Long observed the victim's taser gun lying on her bedroom floor.

Mary Cole, a sexual assault nurse examiner, testified that she interviewed and examined the victim a few hours after the attack. She said the victim was crying as she provided the details of the incident. Cole recalled that the victim had an implanted device in her back for chronic pain that had been damaged in the struggle and that the victim complained of pain in her lower back. She also noted that the victim's left lower forearm was sore, and the victim had discomfort in her pubic area. Cole swabbed the victim's lower abdomen and pubic area to collect DNA evidence.

Bobby Appleton, an investigator with the domestic violence unit of the Jackson Police Department, testified that Morris gave a statement after being advised of his rights. Morris admitted that he had gone to the victim's house, had drunk some beer, and had pushed the victim onto the bed because he wanted to have sexual relations with her. He said the victim informed him that she did not want to have sex and reached for her cellular phone. Morris asserted that he never removed his pants during the incident and that he fled the victim's home after she told him she was calling the police.

Danielle Jones, a sergeant with the special investigations unit of the Jackson Police Department, testified that Morris consented to a buccal swab for DNA analysis after his arrest. She stated that the DNA evidence from Morris was compared to the evidence collected in the sexual assault kit.

Donna Nelson, a special agent forensic scientist with the Tennessee Bureau of Investigation, was declared an expert in the fields of DNA identification and analysis. She confirmed that the DNA from sperm collected from the victim's body matched the DNA from Morris's buccal swab.

## ANALYSIS

Morris argues that the evidence is insufficient to sustain his conviction for assault. He claims that "[a]ny injury to [the victim's] back, while surely painful and

uncomfortable, was inflicted as a result of the Sexual Battery[.]"  While Morris admits that he pinned the victim's arms during the commission of the sexual battery offense, he claims he "never struck, slapped, kicked, or punched" the victim.  He asserts that his criminal conduct was limited to forcing himself upon the victim and that he never took any separate action that would constitute an assault offense.  We conclude that the evidence is sufficient to support Morris's assault conviction.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict."  State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)).  When evaluating the sufficiency of the evidence, the standard of review applied by this court is "whether 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"  State v. Parker, 350 S.W.3d 883, 903 (Tenn. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)).  In making this determination, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence.  State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two.  State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998).  The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'"  State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting Hanson, 279 S.W.3d at 275).  The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence.  State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)).  Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury.  Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)).  When considering the sufficiency of the evidence, this court shall not substitute its inferences for those drawn by the trier of fact.  Id.

Here, Morris was charged with attempted rape, and the jury convicted him of the lesser included offense of sexual battery.  Morris argues that his criminal conduct was limited to forcing himself upon the victim and that he never took any separate action that would constitute the assault offense.

As relevant in this case, sexual battery is defined as "unlawful sexual contact with a victim by the defendant . . . accompanied by any of the following circumstances: (1) [f]orce or coercion is used to accomplish the act" [or] (2) "[t]he sexual contact is accomplished without the consent of the victim and the defendant knows or has reason to know at the time of the contact that the victim did not consent[.]"[2] T.C.A. § 39-13-505(a)(1), (2) (Supp. 2013). "'Sexual contact' includes the intentional touching of the victim's, the defendant's, or any other person's intimate parts, or the intentional touching of the clothing covering the immediate area of the victim's, the defendant's, or any other person's intimate parts, if that intentional touching can be reasonably construed as being for the purpose of sexual arousal or gratification." Id. § 39-13-501(6) (Supp. 2013). "'Intimate parts' includes semen, vaginal fluid, the primary genital area, groin, inner thigh, buttock or breast of a human being." Id. § 39-13-501(2) (Supp. 2013). As to the assault offense that is the subject of this appeal, the State was required to show that Morris "[i]ntentionally, knowingly or recklessly cause[d] bodily injury to another." Id. § 39-13-101(a)(1) (Supp. 2013).

Morris committed the sexual battery offense by placing his penis between the victim's thighs and on top of the victim's vagina and by ejaculating on her clothing. The evidence shows that he was able to accomplish this unlawful sexual contact by force and without the victim's consent. Morris committed the assault offense by intentionally, knowingly, or recklessly causing bodily injury to the victim. The victim testified that Morris scratched her vagina and damaged the device affixed to her back, which caused her pain. Mary Cole, the sexual assault nurse, also testified that the victim's implanted device had been damaged in the struggle, which caused the victim pain. In addition, Cole stated that victim's forearm was sore from the struggle and that the victim experienced discomfort in her pubic area from the attack. This evidence, when viewed in the light most favorable to the State, was sufficient to support Morris's conviction for assault under Code section 39-13-101(a)(1).

Although not specifically raised as an issue on appeal by Morris, we conclude that the trial court did not err in refusing to merge the assault conviction with the sexual battery conviction. Because the statutory elements of assault and sexual battery are not the same and because neither offense as charged was a lesser included offense of the other, Morris's convictions do not violate double jeopardy. See State v. Watkins, 362 S.W.3d 530, 557 (Tenn. 2012).

---

[2] We note that the jury charge was not included in the appellate record.

## CONCLUSION

Based upon the aforementioned authorities and reasoning, the judgment of the trial court is affirmed.

_____
CAMILLE R. McMULLEN, JUDGE